**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**Barbara Martinez,** individually
and, as to Count VII only, on behalf
of others similarly situated**,**

**Plaintiff,**

**v.** **Case Number:**

**RN Enterprises Infusion Service, Inc.**
**and Rodney G.B. Clements,**
an individual**,**

**Defendants.**
_________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **Barbara Martinez** ("Plaintiff" or "Martinez"), sues Defendant **RN Enterprises Infusion Services, Inc.** ("RN Enterprises") under the Americans with Disabilities Act ("ADA"), the Florida Civil Rights Act ("FCRA"), and the Fair Labor Standards Act ("FLSA"), and Defendant **Rodney G.B. Clements** ("Clements") under the FLSA, and states:

## JURISDICTION AND VENUE

1. This action arises from RN Enterprises' refusal to accommodate Martinez's disability, termination of her employment, and retaliation for requesting

accommodation, and from Defendants' failure to pay overtime compensation and retaliation for wage-related complaints.

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 over the ADA and FLSA claims and jurisdiction over the FLSA claims under 29 U.S.C. § 216(b).

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the FCRA claims because they arise from the same employment relationship, accommodation request, and termination as the federal claims.

4. Venue is proper in this District and Division because Martinez worked remotely from Tampa, Florida, performed the employment at issue here, and experienced the challenged employment practices in Hillsborough County. RN Enterprises also conducted its infusion-services operations in this District, including Pinellas County. A substantial part of the events giving rise to this action occurred here, and Martinez would have continued working here but for her termination.

## PARTIES AND STATUTORY COVERAGE

5. Martinez is a natural person residing in Florida who worked for RN Enterprises as a Regional Nurse Manager beginning on or about June 1, 2023, through April 10, 2025. Her responsibilities later included the Nurse Manager Liaison functions described below.

6. RN Enterprises is a for-profit corporation conducting business in Florida and providing home-infusion nursing services through a multistate network of nurses, nursing managers, and administrative personnel.

7. Clements is RN Enterprises' founder and Chief Executive Officer and exercised operational control over the business and Martinez's employment.

8. Clements approved the Regional Nurse Manager job description, served within the nursing leadership to which Martinez reported, and received her communications about work assignments, supervision, and management practices.

9. On information and belief concerning Defendants' internal allocation of payroll authority, Clements exercised authority over Martinez's rate and method of pay, hours, and the payroll practices under which she was paid as a purported independent contractor without overtime premiums. His responsibility was operational, not merely an ownership interest or corporate title.

10. RN Enterprises and Clements each acted directly or indirectly in RN Enterprises' interest in relation to Martinez's employment and were her employers for purposes of the FLSA. They are jointly and severally responsible for the FLSA violations pleaded against them.

11. RN Enterprises was Martinez's employer under the ADA and FCRA because it retained the right to control, and controlled, the manner and means of her

work as detailed below. Counts I through VI are brought against RN Enterprises only.

12. On information and belief, RN Enterprises employed at least fifteen employees for each working day in twenty or more calendar weeks during 2024 and/or 2025 and was engaged in an industry affecting commerce. Its workforce included nursing leadership, human-resources and intake personnel, nurse managers, and nurses who were employees under the applicable employment-status standards, regardless of tax labels.

13. Martinez's knowledge of the company's multistate nursing operations, management structure, and workforce supports this allegation. The identities, payroll classifications, and dates of service of individual workers are maintained by RN Enterprises.

14. RN Enterprises was an enterprise engaged in commerce within the meaning of the FLSA. On information and belief, its annual gross volume of sales made or business done was at least $500,000 during the relevant period. This allegation is based on its continuing multistate infusion-services operations, multiple regional assignments, nursing workforce, and relationships with pharmacies and other health-care providers.

15. RN Enterprises' personnel handled or worked with goods or materials that had moved in interstate commerce, including infusion supplies and equipment used to provide its services.

16. Independently, Martinez regularly engaged in interstate commerce through her assigned responsibility for nursing operations in Florida and other states. Her assigned territories included Alabama, Texas, Louisiana, Oklahoma, Arizona, Kansas, Nevada, Colorado, Washington, and Utah. She used telephone and electronic communications to coordinate nurses, patient services, onboarding, scheduling, and pharmacy-related work across state lines.

**ADMINISTRATIVE PREREQUISITES**

17. Martinez timely filed a charge of disability discrimination and retaliation against RN Enterprises with the Equal Employment Opportunity Commission, Charge No. 511-2026-00517, and requested dual filing with the Florida Commission on Human Relations.

18. The charge identified her disability disclosure, request for a brief leave as a reasonable accommodation, denial of that request, and immediate termination. The ADA and FCRA claims in this Complaint arise from those charged events and the investigation reasonably expected to grow from them.

19. The EEOC issued its Determination and Notice of Rights closing the charge and authorizing suit. This action is brought within ninety days of receipt of that notice.

20. More than 180 days have elapsed since the administrative charge was filed. Martinez has satisfied the administrative prerequisites to pursuing her FCRA claims and timely elects the civil remedy available under section 760.11, Florida Statutes.

21. All conditions precedent to this action have occurred, have been performed, or have been waived.

## FACTUAL ALLEGATIONS

**RN Enterprises controlled Martinez's continuing employment**

22. Martinez performed continuing nursing-management and clinical-administrative work integral to RN Enterprises' infusion-services business. Her position was not a discrete outside project ending upon delivery of a particular work product.

23. RN Enterprises assigned the regions and nurses for which she was responsible and prescribed her duties through company job descriptions, policies, management directives, and meetings.

24. The June 2023 Regional Nurse Manager description required her to report to the Director of Nursing, oversee nurses within designated territories, conduct case conferences, assist with onboarding, review nursing documentation, maintain visit schedules, and keep the Nursing Department informed of scheduling changes.

25. Her duties also included coordinating after-hours nursing activity, communicating with pharmacies and physicians, reviewing patient documentation and plans of treatment, assisting with compliance, and attending meetings as requested.

26. RN Enterprises required Martinez to perform these functions as part of its own operating structure, under its nursing leadership and policies, for the patients and regions assigned by the company.

27. In December 2024, company management expressly identified a direct supervisor for Martinez. Martinez likewise addressed Clements concerning the reporting line under which she had been hired and the direction of her work.

28. RN Enterprises represented Martinez to others as its Regional Nurse Manager. She used the company's title and communications systems to perform the company's work.

29. The Nurse Manager Liaison job description effective March 3, 2025 required reporting to the National Director of Nursing; continuing communication

with assigned nurses; management of assigned regions; coordination with pharmacies; and performance of other duties requested by the National Director.

30. That description divided regional responsibilities among five Nurse Manager Liaisons, prescribed use of telephone calls to communicate with nurses, and required after-hours availability as requested.

31. At the March 6, 2025 Nurse Manager Liaison meeting, RN Enterprises directed managers to enter working hours, unavailability, coverage, and vacation days in a Teams calendar and to use its time-off form for full days off.

32. The same meeting directions required a response within twenty-four hours after an onboarding email was sent to a new nurse and instructed managers how to use Nurse Plexus notifications and train nurses on the system.

33. These requirements controlled how Martinez performed her day-to-day work, when she had to respond, how her availability was reported, and whether she could take time away. They were not merely specifications for an independently produced final result.

34. RN Enterprises expected Martinez to be available during company-imposed hours and to follow its chain of command when raising grievances.

35. RN Enterprises exercised the authority to deny her requested absence and terminate her when she sought that absence.

36. RN Enterprises paid Martinez a fixed hourly rate of $50 for her work, rather than a negotiated lump-sum price for a completed project or a share of business profits.

37. Her compensation depended on performing the company's assigned work and the hours devoted to it, not entrepreneurial decisions concerning pricing infusion services, acquiring the company's patients, or managing an independently marketed nursing-management enterprise.

38. Martinez applied her nursing skill within RN Enterprises' business and supervisory structure. Professional licensure did not give her control over the company's regional assignments, reporting requirements, required meetings, availability rules, or leave decisions.

39. The ongoing relationship, hourly compensation, integration into the company's ordinary business, assigned territories, required reporting, and company-controlled work practices made Martinez an employee under the applicable ADA and FCRA standards and economically dependent on RN Enterprises for the work at issue under the FLSA.

40. RN Enterprises nevertheless designated Martinez an independent contractor and issued Forms 1099. Its tax reporting, withholding practices, benefits decisions, and contractual terminology did not alter the actual control it exercised or the economic reality of the relationship.

41. A designation associated with an earlier clinical-services arrangement did not determine the legal status of the continuing, company-controlled nursing-management position Martinez assumed in June 2023 and performed through April 2025.

42. Martinez's right to statutory employment protections arose from the actual relationship and was not waived by an independent-contractor designation or any asserted preference for that designation.

**Disability, request for accommodation, and discharge**

43. During the relevant employment period, Martinez had mental-health impairments and a back impairment. Her mental-health impairments substantially limited concentration and thinking when active, including her ability to sustain focus and mental energy during the episode for which she sought leave in April 2025.

44. The leave request addressed an episode of impairment and the resulting need for a brief recovery period; it was not a resignation or abandonment of her position.

45. Martinez possessed the nursing qualifications and experience required for her position and had performed its essential functions, including regional coordination, onboarding, communications with nurses and pharmacies, scheduling, and documentation oversight.

46. She could perform those essential functions with reasonable accommodation, including the short leave she requested so that she could return to her duties.

47. On or about April 9, 2025, Martinez disclosed her disability-related limitations to RN Enterprises and requested a brief medical leave of absence as a reasonable accommodation.

48. She directed the request to Tara Goettl, RN Enterprises' National Director of Nursing, who exercised supervisory authority over her work.

49. In requesting the leave, Martinez explained that she could not then give the position the focus and energy it required, needed time to regroup, and expected to address the matter within the week and return with renewed energy and clarity.

50. Martinez sought a short period away from work to address the limitations and resume the position, not an open-ended exemption from performing its essential functions.

51. RN Enterprises, through Goettl and its human-resources personnel, knew of the request and the disability-related limitations for which Martinez sought accommodation before terminating her employment.

52. The requested brief leave would have enabled Martinez to resume her essential duties. Temporary coverage and regional coordination were already

features of RN Enterprises' nursing-management operations and scheduling practices.

53. RN Enterprises could have provided the brief leave through temporary coordination of coverage without undue hardship.

54. On April 10, 2025, Goettl and human-resources representative Tina Whetstone contacted Martinez, informed her that her leave request could not be approved because the notice was too short, and terminated her employment.

55. During the termination communication, RN Enterprises also stated that she could not meet the physical demands of the job and that it needed someone who could meet the position's demands.

56. RN Enterprises thus denied the accommodation and ended Martinez's employment one day after she requested the short leave.

57. Before denying the request and discharging her, RN Enterprises did not engage Martinez in an individualized discussion of temporary coverage, the short, anticipated duration of the leave, or an effective accommodation that would permit her to remain employed.

58. RN Enterprises treated Martinez's impairment and need for a brief accommodation as grounds to end the employment rather than permit her to return and perform her duties.

59. RN Enterprises' conclusion that Martinez could not meet the position's demands also reflected its perception that she had an impairment affecting her capacity to work. Her discriminatory-discharge claim rests on actual disability and, alternatively under the ADA, on RN Enterprises' treatment of her as impaired. Her accommodation claims rest on actual disability.

60. RN Enterprises' asserted performance justification was not the actual reason for the discharge. Martinez was qualified, had continued to receive substantial regional responsibilities, and had not been placed on a performance-improvement plan or warned of impending discharge before the accommodation request.

61. The company's earlier response-time accusation also rested in part on work outside her responsibility. On December 19, 2024, Martinez explained directly to Clements and management that the nurse identified as evidence of her alleged non- responsiveness was not in her region and that she had not participated in the communication being criticized.

62. The same correspondence reflected that a nurse's onboarding inquiry had been sent to Martinez by mistake rather than to the manager responsible for that nurse.

63. Martinez's prompt factual correction, her continuing assigned responsibilities, the express reliance on her requested absence and ability to meet job

demands, and the immediate discharge after the request support that disability and the request for accommodation—not a genuine performance-based decision—caused the termination.

64. RN Enterprises would not have terminated Martinez when it did but for her disability and, independently, but for her request for reasonable accommodation.

65. Martinez lost wages and other remuneration and suffered emotional distress, mental anguish, and loss of dignity as a result of the denial of accommodation and termination.

**Overtime compensation and wage-related protected activity**

66. Martinez was paid hourly, not on a salary or fee basis. Defendants did not pay a predetermined weekly salary independent of the hours she worked.

67. During her nursing-management employment, including workweeks within the applicable limitations period, Martinez regularly worked approximately forty-one to forty-two hours per week, averaging approximately one to two hours beyond forty.

68. That work included required nursing-management duties, meetings, onboarding communications, regional scheduling, coordination with nurses and pharmacies, and documentation-related work.

69. Defendants required or permitted the work and knew, or through reasonable diligence should have known, of the overtime through assigned duties,

work communications, meetings, scheduling systems, and time-entry and payment records.

70. Defendants did not pay Martinez one and one-half times her regular rate for hours worked beyond forty in a workweek. Their contractor-payment practice omitted the overtime premium owed for those hours.

71. Martinez seeks the unpaid overtime compensation due after crediting payments actually made for the same hours. Payment of straight time did not satisfy the additional overtime obligation.

72. Martinez's nursing license and management title did not supply the salary-or-fee-basis compensation required for the executive, administrative, or learned-professional exemptions applicable to the work at issue. Defendants paid for hours worked at an hourly rate rather than on either required basis.

73. Defendants maintained the time-entry and payment information relevant to calculating her hours and wages. After termination, Martinez requested renewed access to the time-entry application or copies of her pay records from human resources; the requested records were not supplied in response to that request.

74. Before her discharge, Martinez complained to RN Enterprises about compensation for work performed, including overtime compensation, and challenged the company's unlawful wage practices.

75. During her employment, RN Enterprises also proposed requiring managers to take on-call shifts without additional compensation. Martinez and other managers objected and refused the proposed uncompensated work.

76. Martinez's wage-related objections concerned payment for required work and overtime, rather than merely the terminology used on a tax form. In context, they gave RN Enterprises notice that she was asserting a right to lawful compensation for the work it required.

77. Clements controlled the challenged compensation practices and, on information and belief, knew of Martinez's wage-related objections before the termination. RN Enterprises' management likewise knew of her objections.

78. RN Enterprises discharged Martinez after she challenged its compensation practices. The decision removed a worker who had objected to required uncompensated work, and the stated performance justification was pretextual for the reasons stated in paragraphs 60 through 63.

79. Martinez's protected wage complaints were a but-for cause of her discharge. Her FLSA retaliation claim is pleaded independently of, and alternatively to, the ADA and FCRA retaliation claims.

80. Defendants knew or recklessly disregarded whether their practices violated the FLSA. They prescribed hours, availability, meetings, and assigned work, paid Martinez by the hour, and continued the contractor-payment practice

without paying overtime premiums despite her wage-related complaints and objections to uncompensated work.

**Similarly situated workers**

81. Martinez brings the overtime claim in Count VII individually and on behalf of similarly situated workers under 29 U.S.C. § 216(b). Her other counts are individual claims only.

82. The proposed overtime collective consists of current and former Regional Nurse Managers, Nurse Manager Liaisons, and other nurse managers who performed substantially similar nursing-management, scheduling, onboarding, coverage, or clinical-administrative duties for RN Enterprises; were classified as independent contractors or paid on a Form 1099; were compensated hourly rather than on a salary or fee basis; and worked more than forty hours in one or more workweeks without the required overtime compensation during the applicable limitations period.

83. RN Enterprises' common job descriptions, shared manager meetings, regional assignments, reporting structure, scheduling directions, and contractor classifications subjected these workers to common employment and pay practices.

84. Martinez personally worked within that shared management structure and participated in the manager discussions concerning uncompensated on-call work. The common policy of treating hourly nursing-management employees as

contractors deprived affected workers of overtime compensation when they worked over forty hours.

85. The relevant collective issues include whether the actual working relationships made the workers employees, whether their hourly compensation defeated the asserted white-collar exemptions, and whether the common contractor-payment practices omitted required overtime compensation.

86. Only workers who file written consents to join will become party plaintiffs to Count VII. Martinez seeks court-authorized notice and collective treatment on an appropriate evidentiary record.

## COUNT I — ADA DISABILITY DISCRIMINATION: DISCRIMINATORY DISCHARGE

**Against RN Enterprises only**

87. Martinez incorporates paragraphs 5 through 8, 11 through 13, 17 through 65, but does not incorporate any other count.

88. This count arises under 42 U.S.C. § 12112(a).

89. Martinez had an actual disability that substantially limited major life activities, including concentration and thinking when active. RN Enterprises knew of her disability-related limitations before discharging her.

90. Martinez was qualified for the nursing-management position and could perform its essential functions with reasonable accommodation, including the brief leave requested on April 9, 2025.

91. Alternatively, RN Enterprises regarded Martinez as having an impairment and discharged her because of that perceived impairment, as reflected in its statement that she could not meet the physical demands of the job immediately after her request for brief leave.

92. RN Enterprises intentionally discharged Martinez on April 10, 2025 because of her actual or perceived impairment. It relied on her temporary limitations and need for leave instead of her ability to perform the position with accommodation.

93. Her disability was a but-for cause of the discharge. The one-day sequence, the explanation given during termination, and the facts undermining the asserted performance explanation support discriminatory causation.

94. RN Enterprises acted with malice or reckless indifference to Martinez's federally protected rights by terminating her because of disability rather than permitting her to continue in the position with reasonable accommodation.

95. As a direct result, Martinez suffered lost wages and remuneration, emotional distress, mental anguish, loss of dignity, and other compensable injury.

**WHEREFORE**, Martinez requests judgment against RN Enterprises awarding back pay and lost remuneration; reinstatement or, if inappropriate, front

pay; compensatory and punitive damages to the extent authorized by law; prejudgment and postjudgment interest; reasonable attorney's fees and costs; and other appropriate relief, without duplicative recovery.

## COUNT II — ADA VIOLATION FAILURE TO PROVIDE REASONABLE ACCOMMODATION

**Against RN Enterprises only**

96. Martinez incorporates paragraphs 5 through 8, 11 through 13, 17 through 59, and 65, but does not incorporate any other count.

97. This count arises under 42 U.S.C. § 12112(b)(5)(A)–(B).

98. Martinez had an actual disability and was otherwise qualified for the position. She does not rely solely on regarded-as status for this count.

99. On April 9, 2025, she notified National Director of Nursing Tara Goettl of her limitations and requested a brief leave to address them and return to her nursing-management duties within approximately one week.

100. The requested accommodation was specific and limited in duration and would have enabled Martinez to resume performance of the essential functions of her position.

101. RN Enterprises knew of the limitations and requested accommodation. Temporary coverage and coordination among its regional nursing managers made the brief leave reasonable and available without undue hardship.

102. RN Enterprises denied the leave because it considered the notice too short and terminated Martinez the following day. It did not provide the requested accommodation or an effective alternative.

103. Its failure to undertake an individualized discussion concerning the short leave and available coverage contributed to its failure to provide accommodation. This count seeks relief for the denial of reasonable accommodation and loss of employment, not for a freestanding interactive-process violation.

104. RN Enterprises also denied continued employment because of the need to accommodate Martinez's impairment.

105. RN Enterprises acted intentionally and with malice or reckless indifference to Martinez's rights. Its refusal caused lost wages and remuneration, emotional distress, mental anguish, and other compensable harm.

**WHEREFORE**, Martinez requests judgment against RN Enterprises awarding back pay and lost remuneration; reinstatement or front pay; compensatory and punitive damages to the extent authorized by law; interest; reasonable attorney's fees and costs; and other appropriate relief, without duplicative recovery.

## COUNT III — ADA RETALIATION

**Against RN Enterprises only**

106. Martinez incorporates paragraphs 5 through 8, 11 through 13, 17 through 42, and 43 through 65, but does not incorporate any other count.

107. This count arises under 42 U.S.C. § 12203(a).

108. Martinez engaged in protected activity by requesting a reasonable accommodation for her disability on April 9, 2025.

109. She made the request in good faith and with an objectively reasonable belief that a short leave to address her impairment and return to work was an accommodation protected by the ADA.

110. Goettl received the request directly and, with human resources, communicated the denial and termination on April 10, 2025. The decisionmakers knew of the protected request before taking the adverse action.

111. RN Enterprises subjected Martinez to a materially adverse action by terminating her employment. The challenged retaliatory act is the discharge, not merely denial of the requested accommodation.

112. The immediate sequence, express linkage between the requested absence and termination, and pretext facts in paragraphs 60 through 63 establish a causal connection. RN Enterprises would not have discharged Martinez when it did but for her protected accommodation request.

113. The termination would deter a reasonable worker from requesting disability accommodation.

114. As a direct result, Martinez lost wages and other remuneration and incurred damages recoverable under the ADA's anti-retaliation provision.

**WHEREFORE**, Martinez requests judgment against RN Enterprises awarding back pay and lost remuneration; reinstatement or, if inappropriate, front pay; interest; reasonable attorney's fees and costs; and all other relief legally available for this retaliation claim, without duplicative recovery.

## COUNT IV — FCRA DISABILITY DISCRIMINATION: DISCRIMINATORY DISCHARGE

**Against RN Enterprises only**

115. Martinez incorporates paragraphs 5 through 8, 11 through 13, 17 through 65, but does not incorporate any other count.

116. This count arises under section 760.10(1)(a), Florida Statutes.

117. Martinez had a handicap or disability within the meaning of the FCRA, including mental-health impairments substantially limiting concentration and thinking when active.

118. RN Enterprises knew of her disability-related limitations and need for brief leave before terminating her. Martinez remained qualified to perform the essential functions with reasonable accommodation.

119. RN Enterprises discharged Martinez because of her disability on April 10, 2025, immediately after her disclosure and request for brief accommodation. Her disability was a but-for cause of the termination.

120. The explanation concerning the requested absence and physical job demands, the one-day sequence, and the facts undermining the asserted performance justification support that the discharge was discriminatory.

121. RN Enterprises acted intentionally, willfully, and with malice or reckless indifference to Martinez's protected rights.

122. As a direct result, Martinez suffered lost wages and remuneration, mental anguish, loss of dignity, emotional distress, and other compensable injury.

**WHEREFORE**, Martinez requests judgment against RN Enterprises under section 760.11, Florida Statutes, awarding back pay and lost remuneration; reinstatement or front pay; compensatory damages; punitive damages within the applicable statutory limit; interest; reasonable attorney's fees and costs; and other appropriate relief, without duplicative recovery.

## COUNT V — FCRA FAILURE TO PROVIDE REASONABLE ACCOMMODATION

**Against RN Enterprises only**

123. Martinez incorporates paragraphs 5 through 8, 11 through 13, 17 through 59, and 65, but does not incorporate any other count.

124. This count arises under section 760.10(1)(a), Florida Statutes.

125. Martinez had an actual disability, was otherwise qualified for the position, and could perform its essential functions with the short accommodation requested.

126. On April 9, 2025, she disclosed her disability-related limitations to Goettl and requested brief medical leave to address them and return to her duties within approximately one week.

127. RN Enterprises knew of the limitations and requested accommodation. The short leave was reasonable in light of its duration and RN Enterprises' existing arrangements for coverage and regional coordination and would not have imposed undue hardship.

128. RN Enterprises denied the accommodation, failed to provide an effective alternative, and terminated Martinez on April 10, 2025 instead of permitting her to resume the position after the brief leave.

129. RN Enterprises' failure to discuss an individualized accommodation contributed to the denial. This count seeks relief for failure to accommodate, not for a separate procedural violation.

130. RN Enterprises acted intentionally and with malice or reckless indifference to Martinez's rights, causing lost wages and remuneration, mental anguish, loss of dignity, emotional distress, and other compensable injury.

**WHEREFORE**, Martinez requests judgment against RN Enterprises under section 760.11, Florida Statutes, awarding back pay and lost remuneration; reinstatement or front pay; compensatory damages; punitive damages within the applicable statutory limit; interest; reasonable attorney's fees and costs; and other appropriate relief, without duplicative recovery.

## COUNT VI — FCRA RETALIATION

**Against RN Enterprises only**

131. Martinez incorporates paragraphs 5 through 8, 11 through 13, 17 through 65, but does not incorporate any other count.

132. This count arises under section 760.10(7), Florida Statutes.

133. Martinez engaged in protected activity by requesting reasonable accommodation for her disability on April 9, 2025. She acted in good faith and with an objectively reasonable belief that she was exercising protected accommodation rights.

134. RN Enterprises' decisionmakers, including Goettl, knew of the request before the discharge because the request was made directly to Goettl and was addressed in the termination communication.

135. RN Enterprises materially and adversely affected Martinez by terminating her employment on April 10, 2025 because she requested accommodation. The retaliatory action is the termination, not simply denial of leave.

136. The one-day interval, the explanation tying the termination to the requested leave, and the pretext facts in paragraphs 60 through 63 support that her protected activity was a but-for cause of the discharge.

137. RN Enterprises acted willfully and with malice or reckless indifference to Martinez's protected rights. The termination would dissuade a reasonable worker from requesting accommodation.

138. As a direct result, Martinez suffered lost wages and remuneration, mental anguish, emotional distress, loss of dignity, and other compensable injury.

**WHEREFORE**, Martinez requests judgment against RN Enterprises under section 760.11, Florida Statutes, awarding back pay and lost remuneration; reinstatement or front pay; compensatory damages; punitive damages within the applicable statutory limit; interest; reasonable attorney's fees and costs; and other appropriate relief, without duplicative recovery.

## COUNT VII — FLSA UNPAID OVERTIME COMPENSATION

**Against RN Enterprises and Clements**

**Individually and on behalf of similarly situated workers**

139. Martinez incorporates paragraphs 5 through 16, 22 through 42, 66 through 73, 75, and 80 through 86, but does not incorporate any other count.

140. This count arises under 29 U.S.C. § 207(a)(1) and is enforceable under 29 U.S.C. § 216(b).

141. Martinez was Defendants' employee under the FLSA. The company's control of her assignments, reporting, availability, meetings, and leave; its payment of an hourly rate; the continuing relationship; and her integration into its regular operations establish employment rather than an independent enterprise.

142. RN Enterprises employed Martinez in its covered enterprise. Independently, her regular cross-state nursing-management communications and responsibilities constituted engagement in interstate commerce.

143. Clements exercised operational and payroll control over the employment relationship and acted directly or indirectly in RN Enterprises' interest in relation to Martinez's employment. Both Defendants were responsible for the overtime-payment practice.

144. Martinez regularly worked approximately forty-one to forty-two hours in a workweek during her nursing-management employment, including workweeks within the applicable limitations period, performing the required duties identified in paragraphs 24 through 32 and 68.

145. Defendants required or permitted those hours and knew or should have known of them through their assignments, meetings, communications, scheduling systems, and time-entry and pay records.

146. Defendants paid Martinez at a fixed hourly rate of $50 without paying the required overtime rate for hours beyond forty in a workweek. She was

nonexempt because her hourly compensation did not satisfy the salary-or-fee-basis requirements of the asserted executive, administrative, or learned-professional exemptions.

147. Defendants' common contractor-payment practice likewise denied overtime compensation to hourly paid members of the proposed collective who worked more than forty hours in a workweek under substantially similar nursing-management conditions.

148. RN Enterprises' contractor designation, Form 1099 reporting, and any purported contractual classification did not eliminate Defendants' obligation to pay overtime to employees under the actual economic relationship.

149. Defendants' violations were willful. They controlled required work and availability, knew Martinez was paid hourly, and continued the challenged practice despite wage-related complaints and objections to uncompensated work, demonstrating knowledge or reckless disregard of the overtime obligation.

150. Defendants are jointly and severally liable for unpaid overtime compensation due within the applicable limitations period, including the three-year period applicable to willful violations, and an additional equal amount as liquidated damages. Martinez seeks credit for straight-time compensation actually paid for the same hours, not a duplicate payment of that compensation.

151. Martinez and consenting collective members are entitled to reasonable attorney's fees and costs. To the extent liquidated damages are not awarded, they seek prejudgment interest as permitted by law.

**WHEREFORE**, Martinez, individually and for workers who file consents to join, requests judgment jointly and severally against RN Enterprises and Clements for unpaid overtime compensation; an equal amount in liquidated damages; prejudgment interest to the extent legally available in place of liquidated damages; postjudgment interest; reasonable attorney's fees and costs; appropriate collective-action proceedings and court-authorized notice; and other relief authorized by law.

## COUNT VIII — FLSA RETALIATION

**Against RN Enterprises and Clements**

**Martinez's individual claim only**

152. Martinez incorporates paragraphs 5 through 16, 22 through 42, 54 through 56, 60 through 63, and 66 through 80, but does not incorporate any other count.

153. This count arises under 29 U.S.C. § 215(a)(3), enforceable under 29 U.S.C. § 216(b).

154. Before her termination, Martinez made internal complaints about compensation for work and overtime and objected with other managers to RN

Enterprises' proposal that managers perform on-call work without additional compensation.

155. Those complaints, considered in the context of her hourly pay and required work, were sufficiently clear to put Defendants on notice that Martinez was asserting wage-and-hour rights and seeking protection against uncompensated work.

156. Martinez held a good-faith, objectively reasonable belief that Defendants were required to compensate the work and pay overtime when her total hours exceeded forty in a workweek.

157. RN Enterprises, through the management responsible for its compensation practices, knew of Martinez's protected objections before discharging her.

158. On information and belief, Clements knew of those objections and, exercising operational control over the challenged pay practices and the employment relationship, authorized or approved the retaliatory termination carried out through RN Enterprises' nursing leadership and human resources.

159. Defendants terminated Martinez's employment on April 10, 2025 because she challenged their wage practices. Her protected complaints were a but-for cause of the discharge.

160. Defendants' asserted performance explanation was pretextual, as supported by Martinez's correction of a misplaced response-time accusation, her

continuing substantial assignments, and the abrupt termination described in paragraphs 60 through 63.

161. The discharge was materially adverse and would deter a reasonable employee from asserting a right to lawful wages and overtime compensation.

162. As a direct result, Martinez suffered lost wages and remuneration and other injury compensable under the FLSA's anti-retaliation provision. Defendants are jointly and severally liable for the relief authorized for that violation.

**WHEREFORE**, Martinez requests judgment jointly and severally against RN Enterprises and Clements awarding lost wages and an additional equal amount as liquidated damages; reinstatement or, if inappropriate, front pay; other compensatory relief to the extent authorized for FLSA retaliation; interest as permitted by law; reasonable attorney's fees and costs; and other appropriate legal or equitable relief, without duplicative recovery.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues.

Dated this 21st day of October 2026.

Respectfully submitted,

*/s/ Chad A. Justice*
**CHAD A. JUSTICE**
Florida Bar Number: 121559
**SAMUEL DOXSEE**
Florida Bar Number: 127318

**JUSTICE LITIGATION ASSOCIATES, PLLC**
1205 N Franklin St
Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770
E-mail: chad@justicelitigation.law
E-mail: sam@justicelitigation.law
**Attorneys for Plaintiff**